FILED

March 4, 2016

TN COURT OF
WORKERS' COMPENSATION
CLAIMS

Time: 12:23 PM



# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT KNOXVILLE

| | | |
|---|---|---|
| MICHAEL KING, | ) | Docket No.: 2015-03-0176 |
| Employee, | ) | |
| v. | ) | State File Number: 25056-2015 |
| POTTER SOUTH EAST, LLC, | ) | |
| Employer, | ) | Judge Pamela B. Johnson |
| And | ) | |
| FRANK WINSTON CRUM INS. CO., | ) | |
| Insurance Carrier. | ) | |
| | ) | |

## EXPEDITED HEARING ORDER
## DENYING MEDICAL AND TEMPORARY DISABILITY BENEFITS

This matter came before the undersigned Workers' Compensation Judge on the Request for Expedited Hearing filed by the Employee, Michael King, pursuant to Tennessee Code Annotated section 50-6-239 (2015). The central legal issues are (1) whether Mr. King sustained an injury arising primarily out of and in the course and scope of his employment with the Employer, Potter South East, LLC; (2) whether Mr. King is entitled to past or future medical benefits; and (3) whether Mr. King is entitled to past or future temporary disability benefits. For the reasons set forth below, the Court finds Mr. King failed to demonstrate that he is likely to prevail at a hearing on the merits on the issues of compensability and entitlement to medical and temporary disability benefits.[1]

## History of Claim

Mr. King is a twenty-two-year-old resident of Scott County, Tennessee. Mr. King completed the eleventh grade, but did not obtain a GED or high school diploma. Mr. King denied any vocational or specialized training. Mr. King previously worked as a diesel mechanic.

Potter South East employed Mr. King as a construction laborer. (T.R. 1.) On November 11, 2014, Mr. King worked on the expansion project located at exit 407 on

---

[1] A complete listing of the technical record and exhibits admitted at the Expedited Hearing is attached to this Order as an appendix.

Interstate I-40 in Sevier County, Tennessee. (Ex. 1.) Mr. King testified his job responsibilities on that date included laying rebar on a bridge and pouring paraffin walls. While carrying a bundle of rebar with two coworkers, Mr. King testified he tripped and fell ten feet, landing on his right shoulder and right side of his neck. *See also* Ex.1. He proceeded to roll another ten to fifteen feet down an embankment. *Id.* He testified he felt pain immediately after the fall, which he described "felt like I tore muscle off the bone and felt something pop in my shoulder and my neck." Mr. King then told David Strunk, who instructed Mr. King to try to complete the workday.

At the time of his fall, Mr. King testified he wore a safety harness. He testified he "wasn't to the point of tying off" and "there's nothing sitting there, it was wide open."

Mr. King testified he continued working and began shoveling concrete, when he felt a tearing sensation between in his shoulder blades and into his right arm. *See also* Ex. 1. He went to David Strunk and advised him that he "was done for the day." He sat for two hours until the workday concluded and rode back to the Potter South East job site with David Strunk and Charles Smith. He did not submit a written report of his work injury.

Dwayne Potter, the owner of Potter South East, testified by affidavit that Mr. King never reported any work-related injuries during his employment. (Ex. 3.) He also testified that none of the other approximately twenty men working in the area reported witnessing Mr. King fall. *Id.* Mr. Potter additionally testified, pursuant to company policy, an employee working more than six feet off the ground must wear a harness and "tie off." *Id.* Mr. Potter indicated Potter South East consistently enforced this rule without exception. *Id.*

Robert Potter, the Project Superintendent, testified by affidavit that he did not witness Mr. King fall. (Ex. 2.) He also denied that Mr. King told him he fell. *Id.* He further indicated that none of the other approximately twenty men working on the project on that date reported witnessing Mr. King fall or otherwise injure himself. *Id.*

Rocky Sexton, a Potter South East employee, testified by affidavit that he did not witness Mr. King fall and Mr. King did not tell him that he fell. (Ex. 5.) Mr. Sexton further testified that he "would likely have seen it or heard about [Mr. King's fall]." *Id.* Mr. Sexton confirmed that Potter South East trained and required its employees to wear a harness and "tie off" when working at heights above six feet, which Potter South East consistently enforced. *Id.*

David Strunk, Mr. King's supervisor, testified by affidavit that he did not witness Mr. King fall and Mr. King did not report to him that he fell. (Ex. 6.) Mr. Strunk further testified that, had Mr. King fallen, he would have seen it or heard about it. *Id.* Mr. Strunk also confirmed Potter South East's requirement that employees wear harnesses

2

and "tie-off" if working above six feet. *Id.* Mr. Strunk indicated if Mr. King properly wore a harness and tied-off, then he would not have fallen as alleged. *Id.* Mr. Strunk additionally testified Mr. King "personally told me that he had a preexisting shoulder condition and stated that it would not impair his ability to work." *Id.*

Mr. King testified he sought treatment on the day of the alleged incident in the emergency department of Pioneer Hospital of Scott County. However, the Court was not presented with any records from a November 11, 2014 emergency room visit.

The records reflect that Mr. King sought treatment with his primary care physician, Dr. Gary R. Phillips, on November 13, 2014.[2] (Ex. 4 at 24.) Mr. King reported right shoulder pain, indicating he "injured shoulder [T]uesday shoveling concrete. Felt something tear. Pt had to quit job." *Id.*

Mr. King returned to see Dr. Phillips on November 24, 2014, for follow-up of his right shoulder. *Id.* at 28. Dr. Phillips noted, "Patient idid [sic] not experience trama [sic] but was shoveling materials and heard something make a sound in his shoulder." *Id.* at 31.

On December 15, 2014, Mr. King saw Dr. Phillips for right shoulder pain and to discuss his medication and work release. *Id.* at 33. Mr. King advised Dr. Phillips that he wanted to return to work. *Id.* at 34. Dr. Phillips released Mr. King to return to work with no lifting greater than twenty pounds for six weeks. *Id.* at 36.

Mr. King sought emergency care from Pioneer Community Hospital (PCH) on December 22, 2014. *Id.* at 103. He reported chest pain and chest discomfort with sudden onset in hours prior to visit. *Id.* The emergency room triage nurse noted, "Chest pain and SOB that started at 1930. Pt states he also has a Rt shoulder injury that he is still recovering from that happened in November." *Id.* at 108. The attending physician assigned restrictions of no lifting. *Id.* at 114-116. The attending physician's primary diagnosis was painful respiration with secondary diagnoses of thoracic sprain and unspecified environmental and accidental causes. *Id.* at 121.

On January 7, 2015, Mr. King returned to the PCH emergency room for chest pain. *Id.* at 87. Mr. King reported "Right sided Chest/shoulder pain with shortness of breath x 1 hour. States this has been ongoing issue since November." *Id.* at 91. The attending physician recommended Mr. King see an orthopedic physician for evaluation of his right shoulder. *Id.* at 99.

Mr. King went back to the PCH emergency room on January 10, 2015, for chest pain and chest discomfort. *Id.* at 75. Mr. King reported sharp pain with radiation into his

---

[2] The Court notes that November 13, 2014, was a Thursday.

shoulder due to a recent injury. *Id.* at 76. The emergency room triage nurse noted "Seen here several days ago for same. Right anterior rib pain radiating to right shoulder. On going [sic] problem since fall in November." *Id.* at 81.

Mr. King went to the PCH emergency room on February 4, 2015, with complaints of pain in his right shoulder, arm, elbow, and hand. *Id.* at 58. He denied a recent injury and described his symptoms as mild. *Id.* The hospital records listed the "occurrence" date as November 12, 2014. *Id.* at 72. The attending physician diagnosed pain in joint, shoulder region, and pain in joint, forearm. *Id.* at 73.

On February 12, 2015, EMS transported Mr. King by ambulance to the PCH emergency room with complaints "altered sensation" in the right arm. *Id.* at 61. Mr. King denied a recent injury and described his symptoms as mild. *Id.*

Mr. King saw Nurse Practitioner Katrina Aberdeen with Family Orthopedic Clinic on March 13, 2015, for a right shoulder problem. *Id.* at 6. Mr. King reported the date of onset as November 2014. *Id.* at 7. He advised, "[H]e has been to the ER 3 times for arm pain. [H]e fell off a bridge initially. [H]e feels electric shocks down his arm with numbness in his little and ring finger." *Id.* Nurse Aberdeen further noted, "I suspect more of his symptoms are coming from his neck." *Id.* Nurse Aberdeen ordered cervical spine x-rays, physical therapy, and a course of prednisone. *Id.*

Mr. King began physical therapy at SouthFork Physical Therapy on March 20, 2015. *Id.* at 11. During his initial evaluation, he reported "experiencing a fall on 11/12/15 [sic]. He states he injured his R shoulder and neck in the fall and has had pain in the neck and shoulder since. He reports radicular symptoms into the R arm, forearm, and hand (4th and 5th digits)." *Id.* at 11.

SouthFork Physical Therapy discharged Mr. King from physical therapy for noncompliance on May 5, 2015. *Id.* at 22-23.

Mr. King underwent a cervical spine MRI scan on June 4, 2015. *Id.* at 10. The radiologist noted, "Normal MRI of the cervical spine." *Id.*

Regarding his ability to return to work, Mr. King testified that he subsequently spoke to Dwayne Potter at Potter South East, who advised him to call back when released to return to work. He further testified that he attempted to return to work on November 30, 2014, but Mr. Potter informed Mr. King that no jobs were available for him due to his restrictions and terminated his employment.

Mr. Potter testified by affidavit that, sometime after November 11, 2014, Potter South East instituted lay-offs. (Ex. 3.) He confirmed that Mr. King contacted him to discuss a return to work and he advised Mr. King that there was not any work available.

4

*Id.* Mr. Potter further testified that Mr. King came to the office to see if there was any work available. *Id.* During that conversation, Mr. Potter testified that Mr. King stated he had a preexisting shoulder condition and specifically denied ever injuring his shoulder during his employment at Potter South East. *Id.*

In September 2015, Mr. King was arrested for driving under the influence while operating a semi-truck. At the time of his arrest, Mr. King was in the process of purchasing the truck to begin a new career as a truck driver. Mr. King admitted that, but for his suspended license, he would be in the process of pursuing a career as a truck driver. He further admitted there was nothing physical preventing his from pursuing a career as a truck driver.

Mr. King testified he continued to experience pain in his neck and right shoulder. He denied that he was capable of performing his job at Potter South East. He remained under a thirty-pound lifting restriction. However, he actively searched for subsequent employment at local auto part stores in Scott County, at Wynn Co Supply, and looked for logging jobs.

Mr. King filed a Petition for Benefit Determination on May 8, 2015, seeking medical and temporary disability benefits. The parties did not resolve the disputed issues through mediation, and the Mediating Specialist filed a Dispute Certification Notice on June 15, 2015. Mr. King filed a Request for Expedited Hearing, and this Court heard the matter on January 5, 2016.

At the Expedited Hearing, Mr. King argued he sustained a work-related injury when he fell off the bridge and landed on his right side on November 11, 2014. He notified his supervisor, David Strunk, of his injury on the date it occurred. He denied he suffered from a preexisting shoulder injury and further asserted that there was no evidence in the medical records to suggest otherwise. He asserted that Potter South East did not enforce the safety harness policy and, if violation of the policy occurred, his failure to "tie off" was negligence, not willful. Mr. King contended his injury was a compensable claim, and, therefore, he is entitled to medical and temporary disability benefits.

Potter South East countered that Mr. King's alleged injury did not occur, and, if it occurred, he failed to provide timely notice. Potter South East further argued that Mr. King's alleged injuries did not arise out of and in the course and scope of his employment. Potter South East contended that Mr. King suffered from a preexisting injury to his shoulder and denied any relationship between his condition and his employment.

5

## Findings of Fact and Conclusions of Law

The employee in a workers' compensation claim has the burden of proof on all essential elements of a claim. *Scott v. Integrity Staffing Solutions,* No. 2015-01-0055, 2015 TN Wrk. Comp. App. Bd. LEXIS 24, at *6 (Tenn. Workers' Comp. App. Bd. Aug. 18, 2015). An employee need not prove every element of his or her claim by a preponderance of the evidence in order to obtain relief at an Expedited Hearing. *McCord v. Advantage Human Resourcing,* No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). At an Expedited Hearing, an employee has the burden to come forward with sufficient evidence from which the trial court can determine that the employee is likely to prevail at a hearing on the merits. *Id.*

To be compensable under the workers' compensation statutes, an injury must arise "primarily out of and in the course and scope of employment[.]" Tenn. Code Ann. § 50-6-102(14) (2015). An injury means "an injury by accident . . . arising primarily out of and in the course and scope of employment, that causes death, disablement or the need for medical treatment of the employee." *Id.* For an injury to be accidental, it must be "caused by a specific incident, or set of incidents, arising primarily out of and in the course and scope of employment, and is identifiable by time and place of occurrence[.]" Tenn. Code Ann. § 50-6-102(14)(A) (2015).

In the present case, Mr. King alleged he fell from a bridge and rolled down an embankment on November 11, 2014, while working for Potter South East. He testified two co-workers observed his fall along with Rocky Sexton and Charles Smith. Mr. King issued a subpoena for Mr. Smith to appear to testify, but he failed to appear. Mr. King did not offer testimony from any witness to substantiate his version of events.

In contrast, Potter South East introduced the affidavits of Robert Potter, Dwayne Potter, Rocky Sexton, and David Strunk, who all denied observing Mr. King's alleged fall. Additionally, all four witnesses further denied that any of the twenty men working the project reported seeing Mr. King fall. Upon careful consideration of the evidence available, this Court finds that the Mr. King failed to establish that he is likely to succeed on the merits on the issue of demonstrating an injury "caused by a specific incident" and "identifiable by time and place of occurrence."

Assuming, however, that Mr. King came forward with sufficient evidence to establish that he is likely to succeed on the merits on the issue of demonstrating an injury "caused by a specific incident" and "identifiable by time and place of occurrence," Mr. King must demonstrate that he is likely to prevail at a hearing on the merits that his injury arose primarily out of and in the course and scope of his employment. "An injury 'arises primarily out of and in the course and scope of employment' only if it has been shown by a preponderance of the evidence that the employment contributed more than fifty percent

6

(50%) in causing the injury, considering all causes." Tenn. Code Ann. § 50-6-102(14)(B) (2015).

While the medical records reflected Mr. King advised his medical providers that he injured himself in November, the description of how the injury occurred varied in the medical reports. In November 2014, Mr. King reported he shoveled concrete when he felt a tear in his shoulder. In January 2015, he reported a fall in November. In March 2015, he advised that he fell from a bridge. Regardless of the inconsistencies in the description of how the injury occurred, none of his medical providers provided an opinion as to the cause of his condition and its causal relationship to his employment at Potter South East. Accordingly, this Court finds that Mr. King failed to establish that he is likely to succeed on the merits on the issue of demonstrating that his alleged injury arose primarily out of and in the course and scope of his employment with Potter South East.

Therefore, as a matter of law, based upon the available evidence, this Court finds that Mr. King failed to demonstrate that he is likely to prevail at a hearing on the merits. His request for medical and temporary disability benefits is denied at this time.

In light of this Court's findings above, it is not necessary for the Court to address the defenses of notice and failure to wear the safety harness.

**IT IS, THEREFORE, ORDERED** as follows:

1. Mr. King's claim against Potter South East and its workers' compensation carrier for the requested medical and temporary disability benefits is denied at this time.

2. This matter is set for an Initial (Scheduling) Hearing on **Tuesday, April 12, 2016,** at **2:00 p.m.** eastern time.

**ENTERED** this the ___4th___ day of March, 2016.

_____
**Hon. Pamela B. Johnson**
**Workers' Compensation Judge**

Initial (Scheduling) Hearing:

An Initial (Scheduling) Hearing has been set with Judge Pamela B. Johnson, Court of Workers' Compensation Claims. You must call 865-594-0091 or toll-free at 855-543-5041 to participate in the Initial Hearing.

Please Note: You must call in on the scheduled date/time to participate. Failure to call in may result in a determination of the issues without your further participation.

Right to Appeal:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

2. File the completed form with the Court Clerk *within seven business days* of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3. Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4. The appealing party is responsible for payment of a filing fee in the amount of $75.00. Within ten calendar days after the filing of a notice of appeal, payment must be received by check, money order, or credit card payment. Payments can be made in person at any Bureau office or by United States mail, hand-delivery, or other delivery service. In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing fee. The Affidavit of Indigency may be filed contemporaneously with the Notice of Appeal or must be filed within ten calendar days thereafter. The Appeals Board will consider the Affidavit of Indigency and issue an Order granting or denying the request for a waiver of the filing fee as soon thereafter as is practicable. Failure to timely pay the filing fee or file the Affidavit of Indigency in accordance with this section shall result in dismissal of the appeal.

5. The parties, having the responsibility of ensuring a complete record on appeal, may request, from the Court Clerk, the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a joint statement of the evidence within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. The statement of the evidence must convey a complete and accurate account of what transpired in the Court of Workers' Compensation Claims and must be approved by the workers' compensation judge before the record is submitted to the Clerk of the Appeals Board.

6. If the appellant elects to file a position statement in support of the interlocutory appeal, the appellant shall file such position statement with the Court Clerk within five business days of the expiration of the time to file a transcript or statement of

8

the evidence, specifying the issues presented for review and including any argument in support thereof. A party opposing the appeal shall file a response, if any, with the Court Clerk within five business days of the filing of the appellant's position statement. All position statements pertaining to an appeal of an interlocutory order should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

## APPENDIX

<u>Technical record:</u>
- Petition for Benefit Determination, filed May 8, 2015;
- Dispute Certification Notice, filed June 15, 2015;
- Request for Expedited Hearing, filed July 28, 2015;
- Show Cause Order, issued September 10, 2015;
- Request for Expedited Hearing with Affidavit, filed October 9, 2015;
- Order, issued October 12, 2015;
- Employer's Motion to Dismiss Employee's Request for Expedited Hearing and Motion for Continuance, filed October 13, 2015; and
- Order, issued November 16, 2015; and
- Employee's Amended Position Statement, filed December 30, 2015.

The Court did not consider attachments to Technical Record filings unless admitted into evidence during the Expedited Hearing. The Court considered factual statements in these filings or any attachments to them as allegations unless established by the evidence.

<u>Exhibits:</u>
- EXHIBIT 1: Affidavit of Michael King;
- EXHIBIT 2: Affidavit of Robert Potter;
- EXHIBIT 3: Affidavit of Dwayne Potter;
- EXHIBIT 4 (Collective): Medical Records of:
  - Family Orthopedic Clinic (Nurse Aberdeen),
  - Winfield Medical Center,
  - Jellico Community Hospital,
  - SouthFork Physical Therapy,
  - Mountain People's Health Council (Dr. Phillips), and
  - Pioneer Community Hospital.
- EXHIBIT 5: Affidavit of Rocky Sexton;
- EXHIBIT 6: Affidavit of David Strunk;
- EXHIBIT 7: Wage Statements; and
- EXHIBIT 8: Late-Filed Transcript of Deposition of Michael King (Never filed).

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on this the  4th  day of March, 2016.

| Name | Certified Mail | Fax | Email | Service sent to: |
|---|---|---|---|---|
| William F. Evans, Esq., Employee's Attorney | | | X | williamevansesq@gmail.com |
| Brad C. Burnette, Esq., Employee's Attorney | | | X | bradburnette@foxandfarley.com |
| Sarah H. Best, Esq., Employer's Attorney | | | X | shbest@mijs.com |

Penny Shrum, Court Clerk
WC.CourtClerk@tn.gov

11